EDWARD C. WRIGHT, Respondent, *v.* DANIEL ROSENBLOOM and Others, Composing the Board of Education of the City of Syracuse, Appellants.

*Expenses of the attendance of members of a municipal board of education at a meeting of a national educational association in a distant city — they are not a proper public charge.*

The advantages to the public school system of the city of Syracuse, from the attendance, pursuant to a resolution of the board of education of that city, of the clerk and two·members of such board at an annual convention of the National Educational Association at Los Angeles, California, are too indirect to justify the payment of their traveling expenses out of the funds of the city, under the provision of the Laws of 1885, chapter 26, sections 176, 178,[*] authorizing the board of education "to defray the contingent expenses of the board."

APPEAL by the defendants, Daniel Rosenbloom and others, composing the board of education of the city of Syracuse, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 29th day of December, 1899, upon the report of a referee.

[*] The charter of the city of Syracuse.— [REP.

*James E. Newell,* for the appellants.

*E. C. Wright,* for the respondent.

Judgment affirmed, with costs, on opinion of the referee.

All concurred, except LAUGHLIN, J., who concurred in result.

The following is the opinion of the referee:

WILLIAM S. ANDREWS, Referee:

This action is brought by a taxpayer of the city of Syracuse to restrain the payment by the board of education of that city of the expenses incurred by the clerk and two members of such board in attending the annual convention of the National Educational Association, held at Los Angeles, California, on July 11 to 15, 1899.

On June seventh, the board, by resolution, directed its clerk to proceed to Los Angeles and make arrangements for such of its members as might be able to attend the convention. Pursuant to this resolution, the clerk and two of the commissioners left Syracuse on July third. They reached Los Angeles late on the evening of the eleventh. The next day they attended a meeting of a section of the convention devoted to school administration, and heard various papers and discussions, largely upon questions connected with the ventilation and heating of school buildings. Apparently, this was the only meeting in which they took part, although they went to one or two of the general meetings, as one of them expresses it, to see the room in which they were held, and "the assemblage."

On the evening of the fifteenth they started on their return, reaching Syracuse about August fourth. The expense of the trip amounted to $888.75.

The convention at Los Angeles is one of a series which has been continued for many years. These meetings attract teachers, superintendents and others interested in educational matters, and at them, doubtless, many valuable papers are read and many important discussions take place. These papers and discussions are fully reported, and are published in books which can be purchased by any one interested.

Attendance upon these conventions in the past seems to have resulted in no practical benefit to the Syracuse schools. Probably none could be hoped for which would not equally result from a

perusal of the reports, except for a consideration pointed out by one of the witnesses. He does not regard, he says, the meetings of the convention as the principal thing, but in the intervals between the meetings and at the hotels much information can be obtained from the informal talks and discussions which then take place.

No claim is or can be made upon the evidence that these expenditures were fraudulent or exaggerated, or in any way the result of bad faith. The only question presented is as to the authority of the board to audit and pay them.

The defendants allege that under the charter of the city the board of education is authorized to expend the school fund " to defray the contingent expenses of the board." What these contingent expenses shall be is largely a matter of discretion. If the members deem it wise, they say further, and for the interest of the schools, to send delegates to this or any other convention, they are at liberty to do so and charge the amount paid therefor as a contingent expense.

I cannot agree with the defendants in their contention.

The board of education is a body having such powers and such powers only as are conferred upon it by statute, either expressly or by implication. Its function is the supervision and control of the school system of the city. It is allowed to make such payments as may be needed for the support and maintenance of this system. (Laws of 1885, chap. 26, §§ 176, 178.)

That is the very object and purpose to which each of the expenditures expressly authorized is directed. When, therefore, in connection with them, a general phrase in regard to contingent expenses is used, it must be construed with reference to the rest of the provisions with which it appears. The contingent expenses which the board may pay are expenses relating to the school system of the city; incurred for its benefit; necessary for its maintenance. Here the authority of the board stops, and this is the test by which such a payment as the one at issue must be measured.

Yet a rigid rule may not be laid down. The courts will not inquire too curiously as to just what payments are for the benefit of the schools. The board is given a wise discretion. Where there is room for difference of opinion; where it can fairly be seen that a given expenditure may tend to promote the purposes for which the board is organized, then its judgment is final. Thus undoubtedly

there may be occasions which would authorize the payment of traveling expenses.  Each case must stand by itself.

But one principle is clear.  Where an expenditure is not directed to the support of the school system; where there is no palpable connection between the object to be attained thereby and the object for which the board exists, then it is unauthorized.  The connection must be direct; it must be clear; it cannot be merely fanciful, or one to be deduced by strained or far-fetched reasoning.

Because of this it has been held that a village may not use its funds in the entertainment of visiting editors.  (*Gamble* v. *Village of Watkins,* 7 Hun, 448.)  Nor has it power to employ them to promote a public celebration.  (*Tash* v. *Adams,* 10 Cush. 252.) Yet of such cases it might well be said that the influx of visitors would help the municipality.  But the possible benefits are too remote.  There is too little connection between them and the purposes for which the municipality is organized.

In the case at bar the idea of the board seems to be that the presence of the commissioners and their clerk at Los Angeles would tend to make them more useful officers; to better fit them for their duties, and that in this way the schools would be benefited.

I cannot hold that this is enough.  The broadening of the mental faculties that results from travel and the attrition of mind on mind is well known.  Still the advantages to cities are too indirect to justify on this ground journeys by their officers at the public expense.  Nor may a municipal board use the public funds held by it in trust for the education of its members or employees. This is not within the powers conferred by the charter, either expressly or by implication.  No action short of legislation can render such a proceeding valid.

As the journey to Los Angeles, therefore, is not found to be directly connected with the duties which the board and their clerk were chosen to perform, the plaintiff must succeed in this action.

In such cases there is always a certain amount of hardship involved.  Payments have been made in reliance upon the supposed authority of board or council.  Yet it is well that the lesson of caution in handling public funds should be learned.  It is important that all municipal officials should realize the danger of expenses not made clearly and directly for the public benefit.